# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| BRENDA K. HURSTON | : | CASE NO. C-1-01 313 |
| Plaintiff | : | Magistrate Judge Black |
| -vs- | : | |
| BUTLER COUNTY DEPT. OF JOB AND FAMILY SERVICES, ET AL | : : : | **MOTION OF DEFENDANT BUTLER COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES FOR SUMMARY JUDGMENT** |
| Defendants | : | |

Now comes the defendant Butler County Department of Job and Family Services, by and through its undersigned counsel, and hereby moves this Honorable Court for summary judgment in its favor on all counts in the above-referenced matter as there are no genuine issues of material fact left for trial and defendant is entitled to judgment as a matter of law. This motion is supported by the depositions of plaintiff, the attached memorandum of law and other exhibits attached hereto.

Respectfully submitted,

McGOWAN & JACOBS, LLC

s/Jack C. McGowan
Jack C. McGowan   (0005619)
Attorney for Defendants
 Butler County Department of Job
 and Family Services
246 High Street
Hamilton, Ohio 45011
(513) 844-2000/(513)868-1190 (FAX)
Email: jcm@jcmcgowan.com

**MEMORANDUM**

I. **FACTS**

On May 21, 2001, plaintiff filed a complaint alleging discriminatory conduct based upon race and disability and alleging retaliation. (Doc. 2, p. 2, ¶ 6) Plaintiff went on permanent disability leave in May of 2001 when advised by her doctor that she would be unable to return to work due to the degenerative joint disease in her feet. (Hurston depo., April 5, 2002, p. 8; September 9, 2003, p. 227, Exh. J)

Plaintiff had been hired by the Butler County Department of Human Services, now known as the Butler County Department of Job and Family Services (hereinafter "BCDJFS") on June 6, 1988. (Hurston depo., September 9, 2003, pp. 239-240, Exhibit S, p. 2) Plaintiff alleges discrimination occurred on or about July 13, 2000 and October 17-18, 2000. (Doc. 2, p. 2, ¶ 8) Specifically, plaintiff alleges "failure to provide me the right to equal treatment. Discriminatory conducts-constant harassments." ((Doc. 2, p. 2, ¶ 4) Additionally, plaintiff alleges conduct of the defendant was discriminatory based upon race, disability and retaliation. (Doc. 2, p. 2, ¶ 6) In narrative form, plaintiff alleges:

> "the agency treated me differently because of my complaints of race and disability discrimination, and therefore retaliating against me. The agency did not allow me to continue ordering supplies for both the Middletown and Hamilton offices and gave me more physical work, rather to accommodate my disability. The agency had my position reviewed, but no other position in the division. The agency discriminated against me in retaliation for giving testimony in behalf of another co-worker."

(Doc. 2, p. 3, ¶ 9) No other allegations of wrong doing are contained in the complaint.

In her charge of discrimination filed with the EEOC, plaintiff indicated the cause of the discrimination was race and disability occurring on July 13, 2000, August 17-18 and October 18,

2000. Specifically, plaintiff's complaints in her EEOC charge were for removing tasks which she was able to do and assigning tasks which were more difficult; receiving only one of the items she requested for an accommodation; and requiring her to keep a daily log. (EEOC Complaint, ¶I) Plaintiff also alleged in her EEOC Complaint that she received several warnings for being late and for insubordination due to refusing to comply with a direct request to relinquish notes regarding co-workers' comings and goings. (EEOC Complaint, ¶II) She summarizes that these complaints are discrimination because of race and disabilities. (EEOC Complaint, ¶III) Although the EEOC form had a box for various forms of discrimination including race, disability and retaliation, plaintiff only checked the race and disability boxes. (EEOC Complaint) Plaintiff admitted she did not allege retaliation in her EEOC Complaint. (Hurston depo., April 5, 2002, p. 94)

While a machine operator, plaintiff had responsibility for ordering and processing supplies. (Hurston depo., April 5, 2002, p. 62) This was the same position that plaintiff had when she went on disability. (Hurston depo., April 5, 2002, p. 62) It had always been plaintiff's responsibility as a machine operator to deliver supplies. (Hurston depo., April 5, 2002, p. 84) She delivered all of the supplies that came into the Middletown office. (Hurston depo., April 5, 2002, p. 84) However, if it was "big stuff....like chairs," Benny Goins would have delivered it. (Hurston depo., April 5, 2002, pp. 84-85)

As for plaintiff ordering supplies, generally, co-workers would give their supervisor a request form which would then be approved and given to plaintiff. (Hurston depo., April 5, 2002, p. 88) Plaintiff would then type up a purchase order or requisition after calling for prices from vendors and get the supervisor's approval. (Hurston depo., April 5, 2002, p. 88) The order would then be faxed to the vendor who would fill the order. (Hurston depo., April 5, 2002, p. 88) Upon receipt, plaintiff

3

would inspect and accept the delivery and either file it or put it in the stock room for her later delivery to co-workers. (Hurston depo., April 5, 2002, pp. 88-89) Her job did change with regard to how items were ordered over the years. Initially, she would call to get a price. (Hurston depo., April 5, 2002, p. 88) However, ordering went to a computer which made it easier to obtain prices. (Hurston depo., April 5, 2002, p. 90)

Plaintiff indicated that changes in the way she was treated started happening after May 10, 2000. (Hurston depo., April 5, 2002, pp. 93-94) Plaintiff relates this to a letter she wrote dated February 9, 1999. (Hurston depo., April 5, 2002, p. 95) This is what plaintiff meant in her Complaint regarding retaliation. (Hurston depo., April 5, 2002, pp. 94-95) However, plaintiff did not include retaliation on her EEOC Complaint filed in November of 2000. (Hurston depo., April 5, 2002, p. 94)

Other items which plaintiff claims were discrimination were that she was told not to have people in the building and that her supervisor, Ms. Day wanted her to use a metal cart instead of a plastic cart like another co-worker, Dawn Sullivan. (Hurston depo., April 5, 2002, pp. 48-50) Plaintiff had been using a chair as a cart. (Hurston depo., April 5, 2002, p. 53) Dawn Sullivan's plastic cart arrived in January of 1999. (Hurston depo., September 9, 2003, p. 157) Between January of 1999 and August 21, 2000, plaintiff was able to use Ms. Sullivan's cart. (Hurston depo., September 9, 2003, p. 158) Plaintiff got her own plastic cart in October of 2000. (Hurston depo., September 9, 2003, p. 158) In between August and October of 2000, plaintiff was provided a metal cart. (Hurston depo., September 9, 2003, p. 155) Plaintiff's plastic cart was never taken away from her. (Hurston depo., September 9, 2003, p. 160)

With respect to racial discrimination, the only instance that plaintiff indicated was racially

4

motivated was that she was singled out by white co-workers who made false statements against her and that she was not given a utility cart like Dawn, who was white. (Hurston depo., September 9, 2003, p. 176) However, plaintiff could not provide any evidence that blacks were excluded from using utility carts. (Hurston depo., September 9, 2003, pp. 176-177) With respect to the alleged false statements, plaintiff indicated that co-workers had reported her for talking to them in a disrespectful tone, (Hurston depo., September 9, 2003, pp. 177-178), except for June Hom, whom plaintiff alleged made several false statements (Hurston depo., September 9, 2003, pp. 178-179). The only time plaintiff was reprimanded was when Pam Suldosky and Sherry Compton stated that plaintiff had been disrespectful to them. (Hurston depo., April 5, 2002, pp. 74-75, 102-103, 110, 117; Hurston depo., September 9, 2003, pp. 176-179)

Plaintiff was on temporary disability in February, 2001 for surgery on her right foot. (Hurston depo., April 5, 2002, pp. 6-7) Plaintiff was then diagnosed in May of 2001 with degenerative joint disease in her left foot by Dr. Janis. (Hurston depo., April 5, 2002, p. 8) Dr. Janis indicated that plaintiff was unable to return to work in the filing with the Public Employees Retirement System which plaintiff instigated. (Hurston depo., September 9, 2003, p. 227, Exhibit J) Particularly, Dr. Janis indicated that plaintiff was unable to perform any kind of work. (Hurston depo., September 9, 2003, p. 227, Exhibit J, p. 2, question 7)

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)(citing Fed.R.Civ.P. 56(c)). See also, Lapointe v. UAW, Local 600, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests

with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of genuine issues of material fact.

Celotex, supra, 477 U.S. at 323 (citing Fed.R.Civ.P. 56(c)). If the non-moving party bears the burden of proof on a particular element or claim, the moving party satisfies its initial burden by pointing out to the court the absence of evidence to support the non-moving party's case. Hartsel v. Keys, F.3d 795, 799, (6th Cir. 1996), cert denied, 117 S.Ct. 683 (1997).

Once the moving party has satisfied its burden, the burden then shifts to the non-moving party. Fed.R.Civ.P. 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits, or as otherwise provided in this rule, must set forth specific facts showing there are genuine issues for trial. If he does not respond, summary judgment, if appropriate, shall be entered against him.

As such, the non-moving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be resolved by a jury." Cox v. Kentucky Department of Transportation, 53 F.3d 146, 150 (6th Cir. 1995).

A court is obligated to afford all reasonable inferences and construe the evidence in a light most favorable to the non-moving party. Cox, 53 F.3d at 150. However, summary judgment should be granted if a party who bears the burden of proof at trial does not establish an element of his case. Tolton v. American Biodyne, Inc., 48 F.3d 937, 941 (6th Cir. 1995). The existence of a scintilla of evidence in support of the non-moving party's position is insufficient to avoid summary judgment. Copeland v. Machulis, 57 F.3d 476, 479 (6th Cir. 1995)

6

III. **LAW AND ARGUMENT**

   A. **Prerequisites to Civil Action**

The seminal case in employment discrimination cases is McDonald Douglas Corp v. Green, 411 U.S. 805, 93 S.Ct. 1817 (1973). In McDonald Douglas, the court held there are two jurisdictional prerequisites to federal action:

> "(i) by filing timely charges of employment discrimination with the Commission and (ii) by receiving and acting upon the Commission's statutory notice of the right to sue, 42 U.S.C. 2000e-5(a) and 2000e-5(e)."

Id. at 798, 93 S.Ct. 1822. The Sixth Circuit in Jones v. Truck Drivers Local Union No. 299, 748 F.2d 1083, 1086, (6th Cir. 1984), held "[f]iling an EEOC charge against a party is a necessary prerequisite to suit." In Bryant v. Better Business Bureau of Greater Maryland, Inc., 923 F.Supp. 720, 744 (D.Md. 1996) (citing Chisholm v. United States Postal Service, 665 F.2d 482, 491 (4th Cir. 1981); EEOC v. General Elec. Co., 532 F.2d 359, 368-69 (4th Cir. 1976)), the court held "[a] plaintiff's civil complaint in court is limited by the scope of the investigation which could reasonably have been anticipated to have grown out of the administrative charge." In Bryant, the plaintiff made claims in her civil suit of sexual harassment and sex discrimination. Id. at 745-746. Only claims of sexual harassment appeared in her EEOC charge. Id. at 744, 746. The court held it was not reasonable to assume sexual harassment would include a claim of sex discrimination and granted summary judgment in favor of the defendant. Id. at 746.

Plaintiff admitted that her EEOC charge did not contain allegations of retaliation. (Hurston depo., April 5, 2002, p. 94) A comparison of the EEOC charge with her complaint also makes it clear that the retaliation charge only appears in the civil complaint and not in her EEOC charge. Therefore, the retaliation charge must be dismissed.

In addition to jurisdiction prerequisites which the plaintiff must satisfy which were enunciated in McDonald Douglas, a plaintiff must fulfill the requirements of the statute:

> "[i]n the case of an alleged unlawful employment practice occurring in a State, or political subdivision of the State which has a State or local law prohibiting the unlawful employment practice alleged in establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed under subsection (a) of this section by the person aggrieved before the expiration of 60 days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated, provided that such 60-day shall be extended to 120 days after the effective date of such State or local law."

42 U.S.C. §2000e-5 (c). The Supreme Court of the United States has interpreted this as a "system of deferral to state and local remedies." New York Gas Light Club, Inc. v. Carey, 447 U.S. 54, 62, 100 Supreme Court 2024, 2030 (1980). The court in New York Gas Light Club also noted that claimants are required to resort to these local or state remedies. Id. Clarifying this statement, the court later noted in its decision "[i]nitial resort to state and local remedies is mandated, and recourse to the federal forums is appropriate only when the state does not provide prompt or complete relief." Id. at 65, 100 Supreme Court 2031-2032 (citation omitted). Revised Code §4112.02 provides for the state remedy for discriminatory practices on the basis of race, color, sex, or disability. R.C. 4112.02(A) and (N). The Ohio Civil Rights Commission (hereinafter "OCRC") is authorized to accept filing of charges by complainants of unlawful discriminatory practices outlined in Revised Code §4112.02. §4112.05 provides for a statute of limitations for complaints so that they must be filed within six months after the alleged discriminatory practice was committed. R.C. 4112.05(B)(1). The Commission can investigate charges and hold conferences, conciliations and otherwise attempt to persuade non-compliant employers to comply. R.C. 4112.05(A) and (B)(2). The Commission can also institute a hearing process whereby findings of fact and conclusions of law

can be issued ultimately requiring the alleged offender to cease and desist from the unlawful discriminatory practice and take other remedial action. R.C. 4112.05(B)(5) and (G)(1).

Plaintiff has not shown that she has complied with Chapter 4112 of the Ohio Revised Code. There is nothing before this Court evidencing plaintiff filing anything with the OCRC regarding the charges in her EEOC complaint. Thus, plaintiff has failed to comply with the Court's mandate in New York Gas Light Club and 42 U.S.C. §2000e-5 (c). Thus, plaintiff's race and disability claims should be dismissed. In case the Court does not agree with the defendant that plaintiff's claims should be dismissed for failure to exhaust administrative remedies, plaintiff's claims of retaliation and race and disability discrimination will now be addressed as to their merits.

### B. Racial Discrimination Claim

There are two types of racial discrimination claims: discrimination constituting adverse employment decisions and racial harassment. Allen v. Michigan Dept. of Corrections, 165 F.3d 405, 409-412 (6th Cir. 1999). As to discrimination claims, "reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims." Kocsis v. Multi-Care Management, Inc., 97 F.3d 876, 885 (6th Cir. 1996) (citing Yates v. Avco Corp., 819 F.2d 630, 638 (6th Cir. 1987)). In Allen, plaintiff complained about being constantly observed and followed when other non-black employees were not, being transferred and being told that he would be written up for not completing paperwork in a timely fashion; however, the court held that these were not materially adverse changes in his employment sufficient to qualify as racial discrimination. Id. at 408 and 410.

As to racial harassment, Allen suffered:

"The lock was cut off his locker; his notations in his log book were altered; he

9

received unwarranted disciplinary action; he was monitored more closely than non-black employees; he was not promoted to sergeant; he was subjected to racial epithets and insults by supervisory personnel; and he received a threatening note signed by the 'KKK.'"

Id. at 410.    In Allen, the court held plaintiff had shown sufficient evidence of severe and pervasive conduct to create a hostile work environment. However, plaintiff in the instant case has not shown any evidence remotely comparable to that suffered by Allen. Therefore, she has not shown a prima facie case for racial harassment and her racial discrimination claim/harassment claim should be dismissed.

In Bolden v. PRC, Inc., 43 F.3d 545, 551 (10th Cir. 1994) (citing Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405-06 (1986)), the court held for a plaintiff's "harassment claims to survive summary judgment, his facts must support the inference of a racially hostile environment." The court also held that the facts must support a basis for liability. Id. at 551 (citing Hicks v. Gates Rubber Co., 833 F.2d 1406, 1417-18 (10th Cir. 1987)). In other words, the plaintiff must show two things: "(1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment...(2) the harassment was racial or stemmed from racial animus." Id. (citation omitted). Clarifying the standard further, the court noted:

> "[g]eneral harassment if not racial or sexual is not actionable. The plaintiff must show more than a few isolated incidents of racial enmity. Instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments."

Id. (citations and quotations omitted.)

In Bolden, there were only two racial slurs from two co-workers in eight years of employment and one possibly racial comment regarding a cartoon. While the plaintiff in Bolden was subject to general ridicule for approximately two years, none of it was overtly racial. The court upheld the

lower court's grant of summary judgment in favor of the defendants finding that the plaintiff had failed to present sufficient evidence of racial harassment. Id. at 551-552. The court also considered whether an employee could be constructively discharged by being "forced to quit due to race-based, intolerable working conditions." Id. at 552 (citation omitted). The court held plaintiff's resignation was not the result of alleged illegal discriminatory conduct and affirmed a grant of summary judgment in favor of the defendants noting "not every unhappy employee has an actionable claim of constructive discharge pursuant to Title VII." Id. at 552.

In the case of Johnson v. Milwaukee School of Engineering, 258 F.Supp.2d 896, 903 (E.D.Wis. 2003) (citing Spearman v. Ford Motor Co., 231 F.3d 1080, 1086 (7th Cir. 2000), the court held "Title VII is not a general civility code designed to purge the workplace of all boorish or even harassing conduct." This court also noted that "[r]elatively isolated instances of non-severe misconduct will not support a claim of hostile environment." Id. (citing Ngeunjuntr v. Metro. Life Ins. Co., 146 F.3d 464, 467 (7th Cir. 1998)). The court, in Johnson, held that despite comments by a supervisor that the African-American employees were "to work with their own kind," called "'boys,'" told "not to congregate," and "assigned more demanding tasks than other employees," such conduct did not rise to the level of a hostile work environment claim. Id. The court inferred that the plaintiff must show "the work environment was objectively hostile or abusive." Id. As rationale for its decision, the court indicated that the alleged conduct was neither pervasive nor severe enough to support a claim for hostile work environment. Id.

In the instant case, plaintiff was asked about her supervisors and co-workers and if anything suggested discrimination in their conduct. (Hurston depo., April 5, 2002, pp. 39, 48) However, she could not provide anything specific that suggested race discrimination. (Hurston depo., April 5,

2002, pp. 39-40, 48-49) With regard to racially motivated conduct, the plaintiff could only state that the co-workers who gave statements to her supervisors regarding her being disrespectful were white as opposed to black and that a white co-worker was given a plastic cart. (Hurston depo., September 9, 2003, p. 176) However, plaintiff was provided a plastic cart. (Hurston depo., September 9, 2003, p. 159) No other employees were provided plastic carts. Plaintiff cannot say whether other blacks or whites used the cart. (Hurston depo., September 9, 2003, p. 176) No one ever took her cart away from her. (Hurston depo., September 9, 2003, p. 160) Hence, plaintiff cannot show conduct which was racially motivated. Having failed to raise the inference that the alleged discriminatory conduct stemmed from a racial animus, plaintiff's racial discrimination claim must be dismissed.

### C. Disability Discrimination Claim

In Gowesky v. Singing River Hosp. Systems, 321 F.3d 503, 511 (5th Cir. 2003), the court noted that the McDonald Douglas Test of burden shifting was applicable to claims under the Americans With Disabilities Act requiring plaintiff make a showing of a prima facie case that:

> "(1) he is disabled or is regarded as disabled; (2) he is qualified for the job; (3) he was subject to an adverse employment action on account of his disability; and (4) he was replaced by or treated less favorably than non-disabled employees."

According to the 6th Circuit, a person claiming unlawful discrimination based upon a disability must show that they had the disability *"at the time of the discriminatory act,"* pursuant to the court's decision in Kocsis v. Multi-Care Management, Inc., 97 F.3d 876, 884 (6th Cir. 1996). The court defined that disability as one in which "substantially limited her major life activities, as she had a record of such impairment, or that she was perceived as having such an impairment." Id. The Supreme Court in Toyota Motor Manufacturing, Ky., Inc. v. Williams, 534 U.S. 184, 195, 122 S.Ct. 681, 69 (2002) held that walking, seeing and hearing are major life activities. To the extent manual

tasks may qualify as disabilities, the court held such tasks must be central to daily life, i.e. of central importance to most people's daily lives, permanent or long term, and more than a mere medical diagnosis. Id. at 197-198, 122 S.Ct. at 691. In Black v. Roadway Express, Inc., 297 F.3d 445, 451 (6th Cir. 2002) (quoting Penny v. United Parcel Serv., 128 F.3d 408, 415 (6th Cir. 1997) (quotation omitted)), the 6th Circuit held "'[m]oderate difficulty or pain experienced while walking does not rise to the level of a disability.'" The court in Black, taking into account the ruling in Toyota Motor Mfg., held that despite the claimant's restrictions that he was not substantially limited in any major life activities. Id. Those restrictions were that he should avoid activities "such as walking, kneeling, stooping, jogging, walking on rough terrain, lifting, sitting in a position where he cannot moderately flex and extend his right leg, running or climbing ladders" on a prolonged or repetitive basis. Id. at 451 and 454.

In Gowesky, the plaintiff was an emergency room physician who had been out for carpal tunnel surgery and had been infected with Hepatitis C. 321 F.3d at 510. She recovered from it, but her supervisors required her to present a full medical release from her physicians, take a refresher course in emergency medicine, advise staff and patients about her successful treatment and perform her work as before. Id. at 510. While there were some allegations of comments by her supervisors about they themselves not submitting to treatment by a healthcare provider who had been infected with Hepatitis C or letting their child be treated by someone who had been infected with Hepatitis C, the court found that the comments and the conditions were not unreasonable and did not constitute harassment. Id. at 510-511.

In Lewis v. Henderson, 249 F.Supp.2d 958, 971 (N.D.Ill. 2003), the court held:

"'[T]he ADA does not require employers to create new positions.' Watson v.

13

> Lithonia Lighting, 304 F.3d 749, 752 (7th Cir. 2002); See also, Hansen v. Henderson, 233 F.3d 521, 523 (7th Cir. 2000) ('redunding staffing is not a reasonable accommodation.'); Mays [v. Principi], 301 F.3d [866,] 871 (no need to pair plaintiff with another employee to follow her around)."

In Lewis, the plaintiff was put on light duty, was briefed on how to perform his duties and how to gain assistance from co-workers if he was unable to comply with those duties. Id. The court held that these were reasonable accommodations. Id. The court in Lewis noted that it is the duty of an employee to notify his employer of the need for an accommodation and that it is the duty of the employer to discuss the options for accommodations with the employee and provide one. Id. at 970.

Plaintiff was asked whether she had been accommodated. (Hurston depo., April 5, 2002, p. 83) Plaintiff responded that she had been accommodated. (Hurston depo., April 5, 2002, p. 83) This was before she had asked for the cart. (Hurston depo., April 5, 2002, p. 83) She first asked for the cart when Dawn Sullivan received her cart. (Hurston depo., April 5, 2002, pp. 89-90) Plaintiff then used Dawn Sullivan's cart. (Hurston depo., September 9, 2003, p. 158) Plaintiff asked for and eventually got her own plastic cart despite the fact that she had use of Ms. Sullivan's cart. (Hurston depo., September 9, 2003, p. 158) During the time when she was using Dawn Sullivan's cart, but before she got her own plastic cart, plaintiff was also provided a metal cart. (Hurston depo., September 9, 2003, p. 160) However, she was never kept from using Ms. Sullivan's plastic cart while waiting for her own plastic cart. (Hurston depo., September 9, 2003, p. 158) Once she received the plastic cart, it was never taken away from plaintiff. (Hurston depo., September 9, 2003, p. 159) As is shown by plaintiff's own testimony, she was accommodated.

At some point in time, plaintiff asked for an adjustable chair. (Hurston depo., September 9, 2003, pp. 247-248) Plaintiff does not know whether the chair she received adjusted, only that

someone told her it did not adjust. (Hurston depo., September 9, 2003, pp. 248-249) However, plaintiff had access to an adjustable chair and a fixed height chair before and after her foot surgery. (Goins depo., August 26, 2004, pp. 48-52) Thus, while plaintiff cannot recall what type of chair she had or when she had it, other people recall her having an adjustable height chair for her use.

Lastly, plaintiff cannot show that she suffered adverse employment action in reference to her alleged disability as she voluntarily requested permanent disability leave. (Hurston depo., September 9, 2003, p. 180) She stayed off work continuously from the time she was on temporary disability for surgery to the time she requested permanent disability. (Hurston depo., September 9, 2003, p. 181) Plaintiff was not suspended from work without pay or denied a promotion from August 21, 2000 until she went on disability. (Hurston depo., September 9, 2003, p. 182) While plaintiff alleges her job duties changed to less computer time and more time on her feet, plaintiff testified that ever since 1990, she spent most of her day on her feet. (Hurston depo., September 9, 2003, p. 185)

As plaintiff was shown to have received both accommodations she requested, she was accommodated, and she cannot show she was discriminated against or her accommodation was not met. Therefore, her disability discrimination cause must be dismissed as she did not suffer adverse employment action on account of her disability.

### D. Plaintiff's Retaliation Claim

Under Lewis v. Henderson, 249 F.Supp.2d 958, 971 (N.D.Ill. 2003) (citing Contreras v. Sun Cast Corp., 237 F.3d 756, 765 (7th Cir. 2001)), the court held "a plaintiff must either offer direct evidence of retaliation or proceed under a burden shifting method." In this case, there is no direct evidence that plaintiff was terminated. She voluntarily quit. Under the burden shifting test, the plaintiff must show:

15

> "(1) that he 'engaged in statutorily protected expression;' (2) that he 'suffered an adverse employment consequence;' and (3) that 'there is a casual connection between the protected activity and the adverse action.'"

Id. (quoting Vanasco v. National-Louis Univ., 137 F.3d 962, 968-969 (7th Cir. 1998)). As stated above, plaintiff went on temporary and then permanent disability based upon the deteriorating condition in her feet. Aside from the fact that she did not raise the retaliation in her EEOC charge, she has not provided any evidence that she suffered any adverse action under the second prong of the test. Therefore, her retaliation claim must be dismissed not only for failing to make a prima facie case, but also for failing to raise the charge in her EEOC claim.

### IV.   CONCLUSION

As there are no genuine issues of material fact left for trial, defendant should be entitled to summary judgment as to each of plaintiff's claims. Plaintiff did not bring up retaliation in her EEOC charge and therefore failed to exhaust administrative remedies. Furthermore, plaintiff cannot make a prima facie case regarding retaliation showing an adverse employment action. Additionally, plaintiff cannot show a pervasive and severe case of race discrimination, if she could show anything which could have been racially motivated. Defendant provided her reasonable accommodations when she advised she was having difficulties in performing her job. Through her own testimony, she admitted that she received a cart and chair which she requested and that she used to be on her feet all the time. She cannot show that her job duties changed in any significant way. Lastly, plaintiff has admitted she voluntarily went on permanent disability. Based upon these facts and the law, no reasonable jury could find in plaintiff's favor requiring dismissal of all her claims against the defendant.

Respectfully submitted,

McGOWAN & JACOBS, LLC

s/Jack C. McGowan
Jack C. McGowan    (0005619)
Attorney for Defendants
 Butler County Department of Job
 and Family Services
246 High Street
Hamilton, Ohio 45011
(513) 844-2000/(513)868-1190 (FAX)
Email: jcm@jcmcgowan.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the within Motion of Defendant Butler County Dept. of Job and Family Services for Summary Judgment was mailed by certified mail, return receipt requested this 1st day of February, 2005 to Brenda Hurston, pro se, 1812 Grand Avenue, Middletown, OH 45044.

s/Jack C. McGowan