FILED
JAMES BONINI
CLERK

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

05 MAY -6 PM 4:31

| | | |
|---|---|---|
| BRENDA K. HURSTON | : | **CASE NO. C-1-01-313** |
| Plaintiff | : | Judge Weber; Black M.J. |
| -vs- | | |
| BUTLER COUNTY DEPT. OF JOB AND FAMILY SERVICES | : | **NOTICE OF FILING THE AFFIDAVIT OF LEONARD R. JANIS, D.P.M. (TOTAL FOOT AND ANKLE OF OHIO)** |

COME NOW, Plaintiff, Brenda K. Hurston hereby gives notice of the filing of the affidavit of Leonard R. Janis, D.P.M.(Total Foot and Ankle of Ohio), which is being submitted in support of plaintiff's response motion and memorandum in opposition to defendant's motion of summary judgment and motion to strike exhibits previously filed herein on April 8th, 2005.

Respectfully submitted,

*Brenda K. Hurston*
Brenda K. Hurston
1812 Grand Avenue
Middletown, OH 45044
(513) 420-9692

**CERTIFCATE OF SERVICE**

I, Brenda K. Hurston, hereby certify that a true and correct copy of the within was sent by regular mail to Jack C. McGowan, Attorney for Defendant, Butler County Department of Job and Family Services, 246 High Street, Hamilton, Ohio 45011, this 6th, day of May 2005.

*Brenda K. Hurston*
Brenda K. Hurston, Plaintiff, Pro Se

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| BRENDA K. HURSTON | : | CASE NO. C-1-01 313 |
| Plaintiff | : | M.J. Judge: Timothy S. Black |
| -vs- | : | |
| BUTLER COUNTY DEPT. OF JOB AND FAMILY SERVICES | : | **AFFIDAVIT OF Leonard R. Janis, D.P.M.** (Total Foot and Ankle of Ohio) |
| Defendants | | |

::: ::: ::: ::: ::: ::: :::

STATE OF OHIO        )
                                :
COUNTY OF BUTLER )

**AFFIDAVIT OF LEONARD R. JANIS, D.P.M. IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION OF SUMMARY JUDGMENT AND MOTION TO STRIKE EXHIBITS**

Leonard R. Janis, D.P.M., being first duly sworn on oath and with personal knowledge of the information contained herein, respectfully states to the U.S. District Court as follows:

1. I am over eighteen years of age and am competent to testify as to the matters here set forth.

2. My gender is male and my racial identity is  Caucasian                              .
   (race)

3. My office is located at  5131 Beacon Hill Rd., Suite 360                   ,
   (Number/Street)

   City of  Columbus        , County of  Franklin                   ,

   State of  Ohio               , Zip Code  43228                        .

4. My telephone number is (including area code)  (614)-870-2029       , and

   my fax number is (including area code)  (614)-870-1692                   .

5. My job title and credentials are:

DR. LEONARD R. JANIS, D.P.M. has been in private practice since 1973. He is residency trained, and Board Certified in foot and ankle surgery by the American Board of Podiatric Surgery. He is a fellow of the American College of Foot and Ankle Surgeons, and a member of the Ohio Orthopedic Institute. He teaches foot and ankle surgery at the Orthopedic Learning Center in Chicago, and for the Podiatric Residency Program at Grant Hospital in Columbus, Ohio. Dr. Janis lectures extensively, and has published several articles and books.

6. Brenda K. Hurston has been a patient of mine since 9-3-92 and was referred to me by Dr. Kenneth Walker, D.P.M. She was 33 years of age and was referred for painful feet, the left worse than the right. Onset was insidious of over two and one half year's duration and she had difficulty in walking and wearing shoes comfortably. She did report prior conservative care including injections of cortisone as well as using orthotics. She did not report having a family physician. Examination of the lower extremities confirmed marked subtalar joint and midtarsal joint pronation with pain on palpation of the aforementioned joints. She had a leg length difference, the right greater than the left. Her X-rays: dorsoplantar, lateral and medical oblique projections confirmed marked hypertrophy and bone formation as well as degenerative joint disease of the subtalar, calcaneal cuboid, and talonavicular joints as well as metatarsal cuneiform exostosis bilaterally, the left worse than the right. Peripheral vascular as well as neurological status was not remarkable.

7. In your medical opinion, please give the earliest date that you diagnosed that Ms. Hurston had degenerated joint disease ___9-23-92___ .

8. In your medical opinion does Ms. Hurston meet the criteria for the Americans with Disabilities Act of 1990? (Yes) or No.

9. Did Ms. Hurston ever state to you that she was depressed due to her medical condition?   Yes or (No)

10. In your medical opinion, the refusal of Ms. Hurston's employer not allowing her to wear comfortable shoes that was requested by Dr. Walker in 1990, contribute to the aggravated condition to the right and left foot? (Yes) or No

11. In your medical opinion was it the Approximated or direct cause of agitation to her feet that caused permanent disability? (Yes) or No

12. Had Ms. Hurston been accommodated with a "sit down" position and ability to wear comfortable shoes at time of medical exposure and acknowledgment made to her employer; been able to maintain her job assignment? (Yes) or No

13. In your medical opinion has Ms. Hurston reached medical maximum? (Yes) or No

14. Did Ms. Hurston submits to you documentation dated May 5, 1998, medical report to the Assistant Director at Butler County Department of Human Services in 1998? **Yes** or No

15. According to plaintiff exhibits 746-(1-4), was Ms. Hurston's employer aware that she had degenerated-joint disease in 1998? **Yes** or No

I declare under penalty that the foregoing is true to the best of my knowledge and belief.

_____
Leonard R. Janis, D.P.M.
Total Foot & Ankle of Ohio

SUBSCRIBED AND SWORN TO before me this _20_ day of April, 2005.

Notary Public _____

THERESA K. SMITH
NOTARY PUBLIC, STATE OF OHIO
MY COMMISSION EXPIRES SEPT. 24, 2006

**David C. Randolph, M.D., M.P.H.**
Occupational Medicine
Environmental Medicine
Disability Determination

Fellow, American College of Occupational Medicine
Fellow, American Academy of Disability Evaluating Physicians
American Board of Preventive Medicine (Occupational Medicine)

RECEIVED
BY PERSONNEL

MAY 11 1998

Butler County
Department of Human Services

May 5, 1998


Gail Weigel
Assistant Director
Butler County Department of Human Services
860 NW Washington Boulevard
Hamilton, Ohio 45013

RE:   Brenda Hurston

Dear Ms. Weigel:

Medical records were submitted for review regarding Brenda Hurston. These records include:

A note from her podiatrist Leonard Janis, D.P.M., indicating that she is released to return to work on 04/27/98, with following limitations "previous limitations are now permanent. Patient needs a sitting position for her employment."

There is a job description for the position of office machine operator. This indicates that she "handles most of the departments printing needs" requiring operation of various copying and duplicating machinery, cleaning and adjusting this equipment as well as ordering appropriate forms. This also requires that she maintain a perpetual inventory of office supplies, checking incoming orders, noting discrepancies and "perform other duties as assigned by the administrator." There is no other description regarding physical demands.

There is an operative report from Grant/Riverside Methodist Hospitals in Columbus, Ohio dated 12/17/97, indicating a procedure of bunionectomy with metatarsal osteotomy and two-screw fixation, excision of neuroma, third interspace, left foot, resection of metatarsal cuneiform exostosis, dorsum of left foot and condylectomy of the 5th digit, left foot. Pre and post operative diagnoses include a bunion of the left foot, a neuroma of the third interspace of the left foot, hammertoe of the 5th digit of the left foot and metatarsal cuneiform exostosis of the left foot. The history indicates that she presented with "painful first metatarsophalangeal joint and metatarsal cuneiform exostosis of the dorsal midfoot over the metatarsal cuneiforms, neuroma and hammertoe of the 5th digit of the left foot. The patient states that her foot is "killing her." Reference is made to failure of conservative management. "The patient has had previous subtalar joint and

RE: Ms. Hurston
May 5, 1998
Page Two

triple arthrodesis. Peripheral and vascular and neurological are intact and unremarkable. X-rays show a screw from the talus to the calcaneus and multiple staples in the rear foot. They also show degenerative joint disease and narrowing of the joint space of the 1st MTP joint, a large metatarsal cuneiform exostosis, exostosis of the 5th digit at the proximal interphalangeal joint."

There is an office note dated 12/22/97, indicating that she is five days after surgery and is "doing quite well." The P x-rays show "excellent bony alignment."

She is seen on 12/29/97, and is "doing quite well."

On 01/19/98, she is seen back. This states that she has mild to moderate swelling and is "now able to walk and put pretty much full weight on her foot." X-rays are listed as showing "excellent bony alignment."

There is a note from 2/23/98, also from her podiatrist described as a "admission note." Noting pain in the top part of her right foot and posterior aspect of the right foot. X-rays show "large spurs of the metatarsal cuneiform and navicular cuneiform as well as talonavicular articulations and a large spur formation consistent with a Haglund's deformity with osseous proliferation within the substance within the Achilles tendon." Reference is made to surgery noting "she feels that she would prefer to have her right foot done and have both the right foot and left foot healing at the same time before she returns to work. I am in agreement with this because this would eliminate her having to take off again in the future."

There is an operative report dated 02/25/98, indicating a procedure of resection of the posterior heel spur on the right foot, with open arthrotomy and resection of the talar exostosis, resection of metatarsal cuneiform exostosis of the right foot and application of a posterior splint.

On 03/02/98, she returns and is "doing well." X-rays show "excellent bony alignment."

She is seen back on 03/09/98, and is "doing quite well."

The last visit is dated 03/30/98, and indicates that she is "doing quite well." All of these notes refer only to the right foot with no reference made to left foot complaints or problems at all. He states "I had a long discussion with the patient relative to her job requirements and she may in fact need a job that allows her to sit most of the time and not be on a hard surface. This apparently is contrary to the job she currently has where she states that she is up on concrete and walks distances and/or is up and down constantly. I had a discussion with the patient relative to returning to work and



PLAINTIFF'S EXHIBITS
746-2

RE: Ms. Hurston
May 5, 1998
Page Three

recommended that she do so on a limited duty basis. She was otherwise re-appointed to be seen in one month."

### DISCUSSION AND OPINION:

It is quite apparent from these records that Ms. Hurston has had extensive bilateral foot surgery far more pronounced on the left side than the right with a notation that she has had a partially fused left ankle as well as extensive surgery on both of her feet.

There is no clear indication from these records exactly why Ms. Hurston has been placed on permanent restrictions as the office notes clearly indicate she is healing well from both surgical procedures performed by her podiatrist. I can certainly understand why her job activities would restrict prolonged standing and walking, however there is no indication from these records that she is restricted to a position requiring only sitting. This contention is simply not supported by the objective medical records presently available for evaluation.

Based upon the information presently available it is my opinion that Ms. Hurston's job requirements permit her to sit primarily during the day. However she should certainly be capable of standing and walking for periods of up to 15 to 20 minutes and lift and carry objects weighing up to at least up to 10 pounds. She should avoid squatting and avoid stair climbing or working on uneven surfaces. Her abilities to stand and walk should improve with the passage of time. There is no indication from these records that the restrictions so listed need to be permanent.

My opinions are within the realm of reasonable medical probability. I have made every attempt to provide a reasonable and fair opinion based upon the information available.

Please do not hesitate to contact me should you have any additional questions.

This evaluation was based on standards by the American Medical Association in their *Guide to the Evaluation of Permanent Impairment*, Fourth Edition, Revised 1994.

PLAINTIFF'S EXHIBITS

746-3

RE: Ms. Hurston
May 5, 1998
Page Four

Thank you very much.

Sincerely,

*[signature]*

David C. Randolph, M.D., M.P.H.
Fellow, American Academy of Disability Evaluating Physicians
Fellow, American College of Occupational Medicine
American Board of Preventive Medicine (Occupational Medicine)

DCR/rl

cc: Douglas Duckett
    Butler County Personnel Director and Labor Counsel

PLAINTIFF'S EXHIBITS

746-4